UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter 11

BARKER BOATWORKS, LLC,                          Case No. 8:19-bk-03138-MGW

    Debtor.

_____/


**PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED
STATES BANKRUPTCY CODE FOR BARKER BOATWORKS, LLC**


Dated: May 24, 2019                  **STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
Tampa, Florida                       Amy Denton Harris
                                     Florida Bar No. 634506
                                     110 East Madison Street, Suite 200
                                     Tampa, Florida 33602
                                     Telephone:    (813) 229-0144
                                     Facsimile:    (813) 229-1811
                                     Email:        aharris@srbp.com
                                     Counsel for Debtor and Debtor in Possession

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE FOR BARKER BOATWORKS, LLC (THE "**PLAN**") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN CONDITIONALLY OR FINALLY APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THIS PLAN.   THE DEBTOR RESERVES THE RIGHT TO FILE (I) A MODIFICATION OR SUPPLEMENT TO THIS PLAN OR A MODIFIED, AMENDED, OR AMENDED AND RESTATED PLAN, AND/OR (II) A MODIFICATION OR SUPPLEMENT TO THE DISCLOSURE STATEMENT OR A MODIFIED, AMENDED, OR AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME.  REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTOR'S HISTORY, BUSINESS, AND ASSETS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASE, THE PROCEDURES FOR VOTING ON THE PLAN, AND THE MEANS OF IMPLEMENTING AND FUNDING THIS PLAN.  ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## INTRODUCTION

Barker Boatworks, LLC, as debtor and debtor in possession (the "**Debtor**"), hereby proposes the following Plan for the liquidation of the Debtor and the resolution of the outstanding Claims against and Equity Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. In summary, but subject to more specific details provided herein, the Plan provides for the sale of the Purchased Assets (as defined below). Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 1 of the Plan. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Debtor's Disclosure Statement was approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and has been distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, property, and operation, (b) a summary of significant events which have occurred to date in the Bankruptcy Case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, and Ballot, have been approved by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 14 of the Plan, the Debtor and the Liquidating Trustee expressly reserve the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN HAS BEEN APPROVED BY THE BOARD OF MANAGERS OF THE DEBTOR. IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, AND THE DEBTOR RECOMMENDS THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING

DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR, ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

# Article 1
## DEFINED TERMS

As used in the Plan, the following terms, which appear in this Plan as capitalized terms, will have the meanings set forth below; provided, however, that all of the definitions set forth in Section 101 of the Bankruptcy Code are incorporated herein as though set forth herein in their entirety. If a defined term contained herein is inconsistent with the definition of such defined term set forth in Section 101 of the Bankruptcy Code, the defined term set forth herein controls over the definition of such defined term set forth in Section 101 of the Bankruptcy Code:

**1.01** *"Accepting Customers"* means those Existing Boat Customers that elect scenario 1 or 2 as set forth in Article 5.07 of the Plan, and enter into new boat contracts with the Buyer, to be effective following the Closing, for the construction and the purchase of a 26' Bay, 26' Open, 40; Cat, and/or other boat. Pursuant to the terms of the new boat contracts, the Accepting Customers shall be deemed to have waived any and all claims (including, without limitation, Priority Claims and Unsecured Claims including rejection damage claims) against the Debtor, the bankruptcy estate, and the Liquidating Trust.

**1.02** *"Administrative Expense"* means—

(a) any cost or expense of administration of the Bankruptcy Case that is allowed under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including—

(1) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

(2) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course

of its business (excluding any Postpetition cost, indebtedness or contractual obligation assumed in connection with the Assumed Contracts);

(3)    any Claim granted administrative expense priority status by a Final Order of the Bankruptcy Court;

(4)    any Claim by a Governmental Unit for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Postpetition; and

(5)    compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court);

(b)    any Superpriority Claim; and

(c)    any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court.

The terms "Administrative Expense" and "Administrative Expense Claim" shall not include any Priority Tax Claim, any Disallowed Claim, or any of the Claims in Classes 1 through 7.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes, and for interest and/or penalties related, to such taxes, due from the Debtor for any Postpetition tax year or period).

**1.03** *"Administrative Expense Claim"* means any Claim for the payment of an Administrative Expense.  The terms "Administrative Expense(s)" and "Administrative Expense Claim(s)" are used interchangeably in this Plan.

**1.04** *"Administrative Expense Claim Bar Date"* means, subject to Article 3.06 of the Plan, the date ordered by the Bankruptcy Court or the date established by the Bankruptcy Rules as the last day for filing an application or other Bankruptcy Court-approved request for allowance of an Administrative Expense. In the case of an Administrative Expense arising after the date ordered by the Bankruptcy Court or established by the Bankruptcy Rules as the last day for filing an application or other Bankruptcy Court-approved request for allowance of an Administrative Expense, the Administrative Expense Claim Bar Date will be the Effective Date.

**1.05** *"Affiliate"* means, with respect to any Person (other than the Debtor), (i) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with such Person, (ii) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty percent (20%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (iii) any other Person who is a director, officer, joint venturer or partner (a) of such Person, (b) of any subsidiary of such Person, or (c) of any Person described in clause (i) above.  For the purposes of this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether through ownership of voting

securities, by contract or otherwise.  When used in this Plan as relating to the Debtor, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

     **1.06** *"Allowed Amount"* means the dollar amount in which a Claim is Allowed.

     **1.07** *"Allowed Claim"* means a Claim or that portion of a Claim that is not a Disputed Claim or a Disallowed Claim and (i) (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and (ii) as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" also includes (i) a Disputed Claim which was not objected to prior to the Claims Objection Deadline and (ii) a Claim that is allowed by the Bankruptcy Court (x) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (y) in a Final Order; or (z) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, Allowed Secured Tax Claim, and Allowed Unsecured Claim), has a corresponding meaning.

     **1.08** *"Allowed Class . . . Claim"* means an Allowed Claim in the particular Class described.

     **1.09** *"Allowed Equity Interest"* means an Allowed Equity Interest in the particular Class described.

     **1.10** *"Alternative Transaction"* means the sale of the Purchased Assets to a party other than SFS pursuant to the Sale Order.

     **1.11** *"Asset Purchase Agreement"* means the Asset Purchase Agreement by and between the Debtor and SFS (or such other purchaser as approved by the Bankruptcy Court), as Buyer, dated as of April 29, 2019, as may be amended, modified or supplemented thereafter in accordance with its terms or pursuant to order of the Bankruptcy Court. As used in the Plan, the term "Asset Purchase Agreement" shall also include all exhibits and schedules attached thereto. An executed copy of the Asset Purchase Agreement is on file with the Bankruptcy Court as **Exhibit A** to the Sale Motion (Doc. No. 59). In the event the Bankruptcy Court approves a Buyer other that SFS, the term "Asset Purchase Agreement" shall, as used in the Plan, mean that certain asset purchase agreement by and between the Debtor and such other purchaser as approved by the Bankruptcy Court.

     **1.12** *"Assets"* means any property or asset of any kind in which the Debtor or the Estate holds an interest, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind in such property or asset.

**1.13** *"Assumed Contracts"* has the meaning ascribed to such term in Article 7.01 of the Plan.

**1.14** *"Assumed Contracts Motion"* means the *Debtor's Motion for Authority to Assume and/or Assign Certain Executory Contracts and Unexpired Leases to Strike Force Seven LLC Free and Clear of All Liens, Claims and Encumbrances* (Doc. No. 60).

**1.15** *"Assumed Contracts Order"* means the order granting the Assumed Contracts Motion to be entered in the Bankruptcy Case by the Bankruptcy Court upon approval of the assumption and assignment of the contracts.

**1.16** *"Assumed Liabilities"* means those Liabilities being assumed by the Buyer pursuant to the Asset Purchase Agreement.

**1.17** *"Auction"* means the auction of the Purchased Assets if one or more Bids is received by the Bid Deadline.

**1.18** *"Ballot"* means the ballot accompanying the Disclosure Statement and/or this Plan upon which Holders of Impaired Claims entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.19** *"Bankruptcy Case"* means the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date and presently bears Case No. 8:19-bk-03138-MGW.

**1.20** *"Bankruptcy Code"* means Title 11 of the United States Code (11 U.S.C. §§ l0l *et seq.)*, as in effect on the Petition Date, together with all amendments and modifications to the Bankruptcy Code that were subsequently made applicable to the Bankruptcy Case.

**1.21** *"Bankruptcy Counsel"* means Stichter, Riedel, Blain & Postler, P.A., in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtor in Possession.

**1.22** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

**1.23** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (M.D. Fla. L.B.R.), as in effect on the Petition Date, together with all amendments and modifications to such Rules that were subsequently made applicable to the Bankruptcy Case.

**1.24** *"Bar Date"* means July 22, 2019, the bar date established by the Bankruptcy Court in the Bar Date Order as the last day for filing Proofs of Claim against the Debtor, excluding (i) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (ii) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (iii) a Claim for which a bar date may have

been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (iv) a Claim with respect to an executory contract or unexpired lease that is rejected pursuant to (a) the Plan (as to which the bar date shall be as set forth in Article 7.05 hereof) or (b) a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

1.25 *"Bar Date Order"* means, as the context may require, either (i) the Notice of Chapter 11 Bankruptcy issued by the Bankruptcy Court establishing the Bar Date of July 22, 2019, and the Governmental Unit Bar Date (Doc. No. 11), or (ii) other Final Order(s) entered by the Bankruptcy Court establishing a bar date as to a particular Creditor(s).

1.26 *"Bid Deadline"* means June 7, 2019, at 5:00 p.m. Eastern Daylight Time.

1.27 *"Bid Procedures Order"* means the *Order Granting Debtor's Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amounts, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines* (Doc. No. 40) entered by the Bankruptcy Court.

1.28 *"Break-Up Fee"* means the fee payable to SFS pursuant to the Bid Procedures Order on account of its actual reasonable expenses, up to Three Hundred Thousand and 00/100 Dollars ($300,000.00).

1.29 *"Business Day"* means any day other than (i) a Saturday, a Sunday, or a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (ii) a day on which commercial banks in Tampa, Florida are authorized or required to close by law.

1.30 *"Buyer"* means SFS or such other purchaser of the Purchased Assets pursuant to the Asset Purchase Agreement approved by the Court.

1.31 *"Cash"* means cash, cash equivalents, and other readily marketable direct obligations of the United States of America, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Liquidating Trust drawn on a domestic bank.

1.32 *"Cash Sale Proceeds"* means the Cash portion of the purchase price received by the Debtor at the Closing under the Asset Purchase Agreement.

1.33 *"Causes of Action"* means any and all of the Estate's and the Debtor's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including all actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including claims of the type referred to in the

Disclosure Statement or in Article 8.09 of the Plan; provided, however, that, when used in the Plan, the term "Causes of Action" does not include the Yellowfin Lawsuit, or any claims, demands, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the Plan, the Confirmation Order, or other order of the Bankruptcy Court.  When used in the Plan, the term "Causes of Action" will also specifically include any claims, demands, rights, and causes of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim) on a derivative or other basis.

1.34    *"Claim"* has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise. As used in the Plan, the term "Claim" also includes a Claim against any Affiliate, the Holder of which holds or believes it holds a Claim against the Debtor arising from or related to the same or similar facts and circumstances surrounding the claim against the Affiliate.

1.35    *"Claims Objection Deadline"* means the deadline by which the Debtor, the Liquidating Trustee, or other appropriate party in interest shall object to Claims, and shall be sixty (60) days after the Effective Date, unless extended by an order of the Bankruptcy Court.

1.36    *"Class"* means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

1.37    *"Clerk"* means the Clerk of the Bankruptcy Court.

1.38    *"Clerk's Office"* means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Room 555, Tampa, Florida 33602.

1.39    *"Closing"* means the consummation of the sale and purchase of the Purchased Assets and the other transactions contemplated by and described in the Asset Purchase Agreement.

1.40    *"Closing Date"* means the date of the Closing as provided in the Asset Purchase Agreement.

1.41    *"Confirmation"* or *"Confirmation of the Plan"* means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

1.42    *"Confirmation Date"* means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

1.43    *"Confirmation Hearing"* means the hearing(s) which will be held before the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code in which the Debtor will seek Confirmation of the Plan, as such hearing(s) may be continued from time to time.

1.44    *"Confirmation Order"* means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy

Code, which order will be in form and substance reasonably satisfactory to the Debtor, and will include any amendments, supplements or modifications thereto made with the consent of the Debtor.

**1.45** *"Creditor"* means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims, Secured Tax Claims, and Unsecured Claims.

**1.46** *"Cure Claim"* means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or non-monetary), arising from, relating to, or in connection with the assumption by the Debtor of any Assumed Contract, in each case to the extent Allowed by a Final Order of the Bankruptcy Court. In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

**1.47** *"Cure Claim Deadline"* means June 7, 2019, at 5:00 p.m., as provided in the Bid Procedures Order, or such other deadline for the filing of a Cure Claim established by an order of the Bankruptcy Court.

**1.48** *"Debt"* has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**1.49** *"Debtor"* means Barker Boatworks, LLC.

**1.50** *"Debtor in Possession"* means Barker Boatworks, LLC as debtor in possession in the Bankruptcy Case.

**1.51** *"DIP Advances"* means the aggregate outstanding Postpetition advances extended to the Debtor by the DIP Lender in accordance with and subject to the terms and conditions of the DIP Financing Order and the DIP Loan.

**1.52** *"DIP Financing Order"* means the *Final Order Granting Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001* entered by the Bankruptcy Court (Doc. No. 56).

**1.53** *"DIP Lender"* means SFS, in its capacity as lender in accordance with and subject to the terms and conditions of the DIP Financing Order.

**1.54** *"DIP Loan"* means that certain loan in the amount of not more than One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) to be advanced by SFS to or on behalf of the Debtor pursuant to the terms of the DIP Loan Documents and the DIP Financing Order.

**1.55** *"DIP Loan Claims"* means any and all Claims of the DIP Lender represented by, relating to, or arising under or in connection with the DIP Financing Order, whether Administrative Expense Claims or Secured Claims, including the DIP Advances and accrued and unpaid interest.

**1.56** *"DIP Loan Documents"* means that certain Revolving Credit Note dated April 18, 2019, executed and delivered by the Debtor to SFS, that certain Debtor-in-Possession Credit and Security Agreement dated April 18, 2019, executed by the Debtor and SFS, and such other documents executed in connection therewith.

**1.57** *"DIP Loan Obligations"* has the meaning ascribed to it in Article 1.1 of the Asset Purchase Agreement.

**1.58** *"Disallowed Claim"* means any Claim that has been disallowed by an order of the Bankruptcy Court that has not been stayed pending appeal.

**1.59** *"Disclosure Statement"* means the Disclosure Statement for the Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code for Barker Boatworks, LLC, including all Exhibits, appendices, and schedules attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case and conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, as such Disclosure Statement may be amended, supplemented, modified, or amended and restated from time to time.

**1.60** *"Disclosure Statement Approval Order"* means the order of the Bankruptcy Court conditionally approving the Disclosure Statement entered in the Bankruptcy Case.

**1.61** *"Disputed Claim"* means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (i) (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, (ii) as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (x) withdrawn, (y) overruled by an order of the Bankruptcy Court, or (z) sustained by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (iv) no corresponding Claim has been scheduled in the Schedules, or (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled. A Disputed Claim which has not been objected to prior to the Claims Objection Deadline shall cease being a Disputed Claim and shall become an Allowed Claim. "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, Disputed Secured Tax Claim, and Disputed Unsecured Claim), has a corresponding meaning.

**1.62** *"Distribution"* means a distribution in Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

**1.63** *"Distribution Date"* means the date or dates for any Distribution to a Holder of an Allowed Claim as provided in the Plan, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

**1.64** *"Doc. No."* means the number of the referenced document reflected on the Docket.

**1.65** *"Docket"* means the docket in the Bankruptcy Case maintained by the Clerk.

**1.66** *"Effective Date"* means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 11.02 of the Plan have been satisfied or waived by the Debtor.

**1.67** *"Effective Date Notice"* has the meaning ascribed to such term in Article 11.04 of the Plan.

**1.68** *"Entity"* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.69** *"Equity Interests"* means the membership interests in the Debtor.

**1.70** *"Estate"* means the estate created for the Debtor under Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

**1.71** *"Estimation Hearing"* means a hearing for the estimation of Claims under Section 502(e) of the Bankruptcy Code.

**1.72** *"Excluded Assets"* shall mean any assets that are excluded from the Purchased Assets pursuant to the terms of the Asset Purchase Agreement.

**1.73** *"Exculpated Parties"* has the meaning ascribed to such term in Article 12.02 of the Plan.

**1.74** *"Exhibit"* means any exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

**1.75** *"Existing Boat Contracts"* has the meaning ascribed to it in Article 1.1 of the Asset Purchase Agreement.

**1.76** *"Existing Boat Customers"* means those parties set forth on **Schedule 1.1a** attached to the Asset Purchase Agreement.

**1.77** *"Final Decree"* means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

**1.78**   "***Final Decree Date***" means the date on which the Final Decree is entered on the Docket.

**1.79**   "***Final Order***" means an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which—

> (i)   no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

> (ii)   such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending.

**1.80**   "***General Unsecured Creditor Carve-Out***" shall mean that portion of the Cash Sale Proceeds in the amount of $50,000.00 for distribution to Holders of Allowed Unsecured Claims.

**1.81**   "***Governmental Unit***" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

**1.82**   "***Governmental Unit Bar Date***" means October 2, 2019, the date established by Section 502(a)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtor in the Bankruptcy Case (as fixed by the Bar Date Order).

**1.83**   "***Holder***" means as to any Claim——

> (a)   the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

> (b)   if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court; or

> (c)   the transferee of such Claim, if the owner or Holder of such Claim has transferred the Claim to a third party and filed notice of the transfer and transferee with the Clerk as required by Bankruptcy Rule 3001(e).

**1.84**   "***Impaired***" means, when used with reference to a Claim, a Claim that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.85**   "***Liabilities***" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity

or otherwise, of or relating to the Debtor or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor, or assign thereof, any Assets of the Debtor, the business or operation of the Debtor, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in the Plan, the term "Liabilities" does not include: (i) any obligations under the Asset Purchase Agreement of one party thereunder to another party thereunder, or (ii) any obligations of the Debtor expressly set forth in the Plan; or (ii) any Liquidating Trust Expenses.

1.86    *"Lien"* means, with respect to any Asset, all mortgages, claims (including all Claims), leases, options, hypothecations or similar restrictions, liens, pledges, security interests, and charging orders and any other encumbrance, right or interest of any kind or character, whether vested or contingent, that evidences or secures a debt or payment obligation or adverse ownership interest in the Asset in question, whether imposed by agreement, understanding, law, equity or otherwise, or liens, interests or encumbrances both now existing or hereafter arising which would encumber such Asset arising under any agreement binding on the Debtor or its Assets or arising from any act or omission of the Debtor or arising pursuant to any right, title or interest, or any lien or encumbrance which could hereafter be asserted as a result of the transfer of the Purchased Assets by the Debtor, whether voluntary or involuntary and whether arising by law, contract, or otherwise, and shall include "liens" as such term is defined in Section 101(37) of the Bankruptcy Code.

1.87    *"Liquidating Trust"* means the irrevocable trust to be established on the Effective Date to hold and distribute the General Unsecured Creditor Carve-Out and perform other duties, all as more particularly described in Article 10 of the Plan and in the Liquidating Trust Agreement.

1.88    *"Liquidating Trust Action Recoveries"* means the proceeds of any Causes of Action, excluding fifty percent (50%) of any recovery from the Yellowfin Lawsuit, received by the Liquidating Trustee less all related fees, costs, and expenses of obtaining such proceeds, including fees of counsel for the Liquidating Trustee.

1.89    *"Liquidating Trust Agreement"* means the agreement specifying the rights and obligations of the Liquidating Trust and the Liquidating Trustee, as of the Effective Date, which agreement shall be filed with the Bankruptcy Court separately with a notice of filing.

1.90    *"Liquidating Trust Assets"* means (a) Causes of Action, excluding any recovery from the Yellowfin Lawsuit, (b) Liquidating Trust Action Recoveries, (c) all Excluded Assets except for as set forth in Article 3.02 of the Plan, (d) any interest earned on any of the items listed in subparagraphs (a)-(c) above and (e) all objections, affirmative defenses, and rights of setoff held by the Debtor and/or its Estate relating to Claims.

1.91    *"Liquidating Trust Expenses"* means all reasonable and necessary costs, taxes and expenses of or imposed on the Liquidating Trust, including compensation of the Liquidating Trustee (to be established on or before the date of the Confirmation Hearing), insurance premiums, legal, accounting and other professional fees and expenses, post-Effective Date fees of the United States Trustee for all disbursements made, overhead, and costs and expenses relating to the

objection to and resolution of Unsecured Claims, the prosecution of the Causes of Action, and the expenses associated with the performance of the other duties described in the Liquidating Trust Agreement and in Article 10 of the Plan. All Liquidating Trust Expenses shall be paid by the Buyer within a reasonable period of time following the Liquidating Trustee's presentation of an invoice to the Buyer.

1.92     *"Liquidating Trustee"* means Mark Healy of Michael Moecker & Associates.

1.93     *"Non-Accepting Customers"* means those Existing Boat Customers that do not enter into new boat contracts with the Buyer for the construction and the purchase of a boat. The Non-Accepting Customers shall receive the treatment set forth in Class 4.

1.94     *"Notice Parties"* means the Debtor or the Liquidating Trustee, as the case may be, Bankruptcy Counsel, the United States Trustee, counsel to the Buyer, and all parties listed on the Local Rule 1007-2 Parties in Interest List (as such list is maintained in accordance with the Local Rules of the Bankruptcy Court).

1.95     *"Permitted Liens"* has the meaning ascribed to it in Article 1.1 of the Asset Purchase Agreement, which is attached to the Sale Motion (Doc. No. 59) as **Exhibit A**.

1.96     *"Person"* means any person, individual, sole proprietorship, corporation, association, partnership, limited liability company, joint venture, trust, organization, unincorporated organization, institution, joint stock company, business, government, governmental agency or political subdivision thereof, Governmental Unit within the meaning of Section 101(41) of the Bankruptcy Code, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

1.97     *"Petition Date"* means April 5, 2019, the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.98     *"Plan"*, *"the Plan"*, or *"this Plan"* means this Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code for Barker Boatworks, LLC dated as of May 24, 2019, (together with all Exhibits to the Plan), as the Plan may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

1.99     *"Plan Documents"* means the proposed form of any and all documents necessary to consummate the transactions contemplated under the Plan to occur on the Effective Date.

1.100     *"Postpetition"* means arising or accruing on or after the Petition Date and before the Effective Date.

1.101     *"Prepetition"* means arising or accruing prior to the Petition Date.

1.102     *"Priority Claim"* means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense, Priority Tax Claim, Secured Claim, Secured Tax Claim, or Unsecured Claim, and excluding any Claims of Accepting Customers.

**1.103** *"Priority Tax Claim"* means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Priority Claim, Secured Claim, Secured Tax Claim, or Unsecured Claim.

**1.104** *"Pro Rata Share*" means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

**1.105** *"Professional"* means any professional employed in the Bankruptcy Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

**1.106** *"Proof of Claim"* means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

**1.107** *"Purchased Assets"* means those Assets sold by the Debtor to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order.

**1.108** *"Rejected Contracts"* has the meaning ascribed to it in Article 7.01 of the Plan.

**1.109** *"Sale Motion"* means the *Debtor's Motion for Order Authorizing the Sale of Substantially All of Its Assets to Strike Force Seven LLC Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers at Auction* (Doc. No. 59).

**1.110** *"Sale Order"* means the order granting the Sale Motion to be entered in the Bankruptcy Case by the Bankruptcy Court upon approval of the sale by the Bankruptcy Court.

**1.111** *"Schedules"* means, collectively, the Schedules and Statement of Financial Affairs filed by the Debtor in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.112** *"Secured Claim"* means any Claim that is—

(a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

(b) subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both subparagraphs (a) and (b) above, only to the extent of the Estate's interest in the value of the Assets securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in the Assets securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim.

**1.113** *"Secured Tax Claim"* means a Secured Claim of a Governmental Unit for Prepetition taxes.

**1.114** *"SFS"* means Strike Force Seven LLC, a Florida limited liability company.

**1.115** *"SunTrust"* means SunTrust Bank, N.A.

**1.116** *"Superpriority Claim"* means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

**1.117** *"Synovus"* means Synovus Bank, a Georgia banking corporation.

**1.118** *"Unimpaired"* means that a Claim is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.119** *"United States Trustee"* means the United States Trustee for Region 21.

**1.120** *"Unsecured Claim"* means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, Secured Tax Claim, or Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (ii) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Assets securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, and (iii) any Claim designated as an Unsecured Claim elsewhere in the Plan including, without limitation, any non-Priority Claim of the Non-Accepting Customers.

**1.121** *"Unsecured Creditor"* means any Creditor holding an Unsecured Claim.

**1.122** *"Voting Deadline"* means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Plan as fixed by an order of the Bankruptcy Court.

**1.123** *"Voting Instructions"* means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

**1.124** *"Yellowfin Lawsuit"* means that certain action filed by the Debtor and Kevin Barker against Yellowfin Yachts, LLC and its principal, Wylie Nagler, for, among other things, defamation, tortious interference with an advantageous business relationship, and breach of contract. The case is styled *Barker Boatworks, LLC and Kevin Barker v. Yellowfin Yachts, LLC and Wylie Nagler*, Case No. 2016-CA-000355AX and is pending in the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida. Pursuant to Article 2.1(b) of the Asset Purchase Agreement, fifty percent (50%) of any recovery from the Yellowfin Lawsuit is a Purchased Asset and the remaining fifty percent (50%) of any recovery is property of Kevin Barker.

# Article 2
## CONTROLLING LAW AND RULES OF CONSTRUCTION

**2.01    *Reference to Bankruptcy Code and Bankruptcy Rules.*** Any capitalized term used in the Plan that is not defined in the Plan or in the Asset Purchase Agreement, but which is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  In the instance of a conflict or ambiguity, the definitions in the Plan or in the Asset Purchase Agreement control over the definitions set forth in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**2.02    *Rules of Construction.*** For purposes of the Plan, the following rules of construction will apply:

(a)    Whenever from the context it is appropriate, (i) each term, whether stated in the singular or the plural, will include both the singular and the plural, and (ii) the gender of all words herein will include the masculine, feminine and neuter.

(b)    Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document will be substantially in such form or substantially on such terms and conditions.

(c)    Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented.

(d)    If the description in the Plan of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit will control.

(e)    Unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan.

(f)    Unless the context requires otherwise, the words "herein", "hereunder", "hereof", and "hereto" refer to the Plan in its entirety rather than to a particular article or section or subsection of the Plan.

(g)    Any phrase containing the term "include" or "including" will mean including without limitation.

(h)    All of the Exhibits attached to this Plan will be deemed incorporated herein by such reference and made a part hereof for all purposes.

(i)    Any reference to a Person or an Entity as a Holder of a Claim or Equity Interest includes such Person's or Entity's heirs, personal representatives, successors and assigns.

# Article 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

**3.01** *Nonclassification.* In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth in this Article 3.

**3.02** *Administrative Expenses.* Except as otherwise provided in Articles 3.03 through 3.06 below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Effective Date an amount, in Cash, equal to the Allowed Amount of its Administrative Expense Claim less any portion of such Allowed Administrative Expense Claim that has already been satisfied, or (b) under such other terms as may be agreed to by the Holder of such Allowed Administrative Expense Claim. Bankruptcy Counsel's Allowed fees and costs up to $100,000 shall be paid from the carve-out provided by the Buyer. Any remaining balance shall be paid from the Debtor's cash on hand.

**3.03** *DIP Loan Claims.* All amounts owed to the DIP Lender for the DIP Loan Claims shall be paid on the Closing Date by the Buyer as provided for in the Asset Purchase Agreement.

**3.04** *Fees and Charges.* All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid no later than thirty (30) days after the Effective Date.

**3.05** *Assumed Liabilities.* All Allowed Administrative Expense Claims representing Assumed Liabilities shall not be the responsibility of the Debtor or the Liquidating Trustee and shall not be entitled to receive payment under Article 3 of the Plan, but shall be paid by the Buyer in accordance with the terms and conditions of the Asset Purchase Agreement.

**3.06** *Applications for Allowance of Administrative Expenses.* Except as provided in Articles 3.03, 3.04, and 3.05 above, all Holders of Administrative Expense Claims (including Holders of any Claims for non-ad valorem Postpetition federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claim Bar Date will be forever barred from asserting such Administrative Expense Claim against the Debtor, the Liquidating Trust, or any of their respective assets or properties.

**3.07** *Priority Tax Claims.* All Allowed Priority Tax Claims shall be assumed by the Buyer and paid (a) in deferred cash payments with a value, as of the Effective Date, equal to the Allowed Amount of such Holder's Allowed Priority Tax Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Buyer.

# Article 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.01** *In General.* Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim is classified (a) in a particular Class of Claims only to the extent the Claim qualifies within the description of that Class and (b) in a different Class to the extent the Claim qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims against the Debtor that qualify within the description of that Class.

**4.02** *Classes.* For purposes of this Plan, Claims and Equity Interests are classified as follows:

(a)     Class 1 consists of all Allowed Priority Claims.

(b)     Class 2 consists of all Allowed Secured Claims of SunTrust.

(c)     Class 3 consists of all Allowed Secured Tax Claims.

(d)     Class 4 consists of the Allowed Claim of Synovus.

(e)     Class 5 consists of the Claims of Existing Customers.

(f)     Class 6 consists of all Allowed Unsecured Claims not otherwise specifically classified in the Plan.

(g)     Class 7 consists of all Allowed Equity Interests.

# Article 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**5.01** *In General.* Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

**5.02** *Unclassified Claims.* Each Holder of an Allowed Administrative Expense or an Allowed Priority Tax Claim will receive the treatment set forth in Article 3 of the Plan.

**5.03** *Class 1: Allowed Priority Claims.* Class 1 consists of all Allowed Priority Claims, including, without limitation, Allowed Priority Claims of Non-Accepting Customers pursuant to Section 507(a)(7) of the Bankruptcy Code. Pursuant to Article 2.3(d) of the Asset Purchase Agreement, the Buyer shall pay all Allowed Class 1 Claims in full on the Effective Date. Class 1 is Unimpaired and, therefore, is not entitled to vote to accept or reject the Plan. Class 1 is presumed to have accepted the Plan.

**5.04** *Class 2: Allowed Claims of SunTrust.* Class 2 consists of all Allowed Claims of SunTrust. The treatment of SunTrust's Allowed Claims shall be divided into two sub-classes as follows:

(a)    Class 2A consists of SunTrust's Allowed Claim in connection with a Lien on a 2014 Ford F250 VIN 1FT7W2BT8EEA96079. On account of its Allowed Class 2A Claim, SunTrust shall receive one of the following alternative treatments:

(1)    The Buyer has the option to acquire the 2014 Ford F250 VIN 1FT7W2BT8EEA96079, subject to the Buyer's assumption and payment of SunTrust's Allowed Class 2A Claim. If the Buyer exercises this option, on the Closing Date, the Debtor shall grant, sell, assign, transfer and deliver to the Buyer all right, title and interest of the Debtor in, to and under the 2014 Ford F250 VIN 1FT7W2BT8EEA96079, subject to the Buyer's assumption and payment of SunTrust's Allowed Class 2A Claim, but free and clear of any and all other Liens, Claims, and Encumbrances. In such event, SunTrust's Allowed Class 2A Claim shall constitute an Assumed Liability pursuant to the Asset Purchase Agreement and the Buyer shall pay the Allowed Class 2A Claim pursuant to the agreement between the Buyer and SunTrust.

(2)    If the Buyer does not exercise the option set forth above, on the Effective Date or as soon as practicable thereafter, the Debtor shall surrender the 2014 Ford F250 VIN 1FT7W2BT8EEA96079 to SunTrust in full and final satisfaction of its Allowed Class 2A Claim.

(b)    Class 2B consists of SunTrust's Allowed Secured Claim in connection with a Lien on a 2014 Ford F150 VIN 1FTFW1EF7EFD05107. On account of its Allowed Class 2B Claim, SunTrust shall receive one of the following alternative treatments:

(1)    The Buyer has the option to acquire the 2014 Ford F150 VIN 1FTFW1EF7EFD05107, subject to the Buyer's assumption and payment of SunTrust's Allowed Class 2B Claim. If the Buyer exercises this option, on the Closing Date, the Debtor shall grant, sell, assign, transfer and deliver to the Buyer all right, title and interest of the Debtor in, to and under the 2014 Ford F150 VIN 1FTFW1EF7EFD05107, subject to the Buyer's assumption and payment of SunTrust's Allowed Class 2B Claim, but free and clear of any and all other Liens, Claims, and Encumbrances. In such event, SunTrust's Allowed Class 2B Claim shall constitute an Assumed Liability pursuant to the Asset Purchase Agreement and the Buyer shall pay the Allowed Class 2B Claim pursuant to the agreement between the Buyer and SunTrust.

(2)    If the Buyer does not exercise the option set forth above, on the Effective Date or as soon as practicable thereafter, the Debtor shall surrender the 2014 Ford F150 VIN 1FTFW1EF7EFD05107 to SunTrust in full and final satisfaction of its Allowed Class 2B Claim.

Classes 2A and 2B are Impaired and are entitled to vote to accept or reject the Plan.

**5.05    *Class 3: Allowed Secured Tax Claims.***    Class 3 is comprised of consists of all Allowed Secured Tax Claims of Governmental Units.  The Allowed Class 3 Secured Tax Claims are an Assumed Liability of the Buyer pursuant to Article 2.3 of the Asset Purchase Agreement, and shall be assumed by the Buyer on the Closing Date and paid in accordance with Section 1129(a)(9)(D) of the Bankruptcy Code, or under such other terms as may be agreed upon by both the Holder of such Allowed Secured Tax Claim and the Buyer.  Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

**5.06    *Class 4: Allowed Claim of Synovus.***    Class 4 consists of the Allowed Claim of Synovus.  Synovus's Allowed Claim is an Assumed Liability of the Buyer pursuant to Article 2.3(b) of the Asset Purchase Agreement, and shall be assumed by the Buyer on the Closing Date and paid in accordance with the Synovus Bank Loan Documents (as defined in Article 1.1 of the Asset Purchase Agreement), provided that both of the life insurance policies assigned to Synovus as collateral by Marianne Barker and the personal guaranty of Kevin Barker remain in place following the Closing.  Class 4 is Unimpaired and, therefore, is not entitled to vote to accept or reject the Plan.  Class 4 is presumed to have accepted the Plan.

**5.07    *Class 5: Allowed Claims of Existing Customers.***    Class 5 consists of all Claims of Existing Customers.  As set forth on Schedule 7.4 to the Asset Purchase Agreement, the treatment of Existing Customers is set forth below:

    A.    All 40' Cat Existing Boat Contracts would be replaced with contracts that are priced to the current fair market value for such boats and shall be subject to the provisions of subsection C, below.

    B.    All Existing Boat Contracts for the 26' Bay and the 26' Open would be replaced with new contracts and be subject to the provisions of subsection C, below.

    C.    In respect of each of the 26' Bay, 26' Open and 40' Cat, customers that have boats on order as of the Closing and who elect to enter into a New Boat Contract with the Buyer will be required to elect one of the following scenarios:

        a.    <u>Scenario 1</u>: The customer would be permitted to utilize 100% of the customer's deposit and 100% of any progress payments made on the customer's current boat on order as of the Closing as follows: 50% of the deposit and 50% of any progress payments will be applied to the customer's boat on order as of the Closing. The customer would then have the option to (i) immediately order any 35+' boat and apply the remaining 50% balance of the customer's deposit and progress payments to such new order, or (ii) order any other Barker or Canyon Bay model (excluding the Barker 26), up to 35' long, twelve (12) months after delivery of the boat on order as of the Closing and apply the remaining 50% balance of the customer's deposit and progress payments to such new order, or (iii) order a Barker 26 boat twenty-four (24) months after delivery of the boat on order as of the Closing and apply the remaining

50% balance of the customer's deposit and progress payments towards such new order. If either option is exercised by the customer, the second boat would be sold at the fair market value at the time of such exercise.

b.  <u>Scenario 2</u>: The customer would be permitted to utilize 60% of the customer's deposit and 60% of any progress payments made on the customer's current boat on order as of the Closing, which amounts will be applied to the completion of such boat.

c.  <u>Scenario 3</u>: The customer can choose to not complete its boat order and 100% of the customer's deposit and 100% of any progress payments made on the customer's current boat on order as of the Closing will be general unsecured claims in the Bankruptcy Case.

d.  Each Existing Customer shall have until the Voting Deadline to elect Scenario 1, 2, or 3; provided, however, that the Buyer may, in its sole and absolute discretion, extend the time for an Existing Customer to elect Scenario 1 or 2 and enter into a New Boat Contract.  Any Existing Customer that fails to timely elect Scenario 1 or 2 shall be deemed to have elected Scenario 3.

e.  Any Existing Customer electing Scenario 1 or 2 shall be an Accepting Customer and shall be deemed to have waived all Claims, including, without limitation, Priority Claims pursuant to Section 507(a)(7) of the Bankruptcy Code and Unsecured Claims, including rejection damage claims, as a result of the Debtor's rejection of such customer's Existing Boat Contract, against the Debtor, the bankruptcy estate, and the Liquidating Trust, and shall not receive any distributions under the Plan.

f.  Any Accepting Customer shall not be entitled to vote to accept or reject the Plan.

g.  Any Non-Accepting Customer is deemed to have elected Scenario 3, shall have an Allowed Class 1 Priority Claim in the amount of $3,025.00, with the balance of the claim treated in accordance with Class 6.

h.  Any Non-Accepting Customer shall be entitled to vote to accept or reject the Plan in accordance with Class 6.

**5.08** *Class 6: Allowed Unsecured Claims (Not Otherwise Classified).*  Class 6 consists of all Allowed Unsecured Claims against the Debtor not otherwise specifically classified in the Plan.  Each Holder of an Allowed Class 6 General Unsecured Claim shall receive such Holder's Pro Rata Share of the Unsecured Creditor Carve-Out, to be paid within thirty (30) days of the Effective Date.  Class 6 is Impaired and entitled to vote to accept or reject the Plan.

    **5.09** *Class 7: Equity Interests.* Class 7 consists of all Equity Interests. On the Effective Date, the Equity Interests shall be cancelled and extinguished. Class 7 is deemed to have rejected the Plan and is therefore not entitled to vote to accept or reject the Plan.

# Article 6
## ACCEPTANCE OR REJECTION OF THE PLAN

    **6.01** *Each Impaired Class Entitled to Vote Separately.* The Holders of Claims in each Impaired Class of Claims will be entitled to vote separately to accept or reject the Plan.

    **6.02** *Acceptance by Impaired Classes.* Classes 2A, 2B, 3 and 6 are Impaired[1] under the Plan, and the Holders of Claims in such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

    **6.03** *Presumed Acceptance of Plan by Unimpaired Classes.* Classes 1 and 4 are Unimpaired. Pursuant to Section 1126(f) of the Bankruptcy Code, each such Class and the Holders of Claims and Equity Interests in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained in the Plan or otherwise will affect the Debtor's or the Liquidating Trustee's rights and legal and equitable claims or defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

    **6.04** *Impairment Controversies.* If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

---

[1] The Existing Customers in Class 5 either timely elect Scenario 1 or 2, pursuant to which they waive any Claims, distributions, and the right to vote, or they elect or are deemed to have elected Scenario 3, pursuant to which they vote in accordance with Class 6. Accordingly, Class 5 is a non-voting Class.

## Article 7
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** *Assumption or Rejection of Executory Contracts and Unexpired Leases.* The treatment of executory contracts and unexpired leases identified by the Buyer as assumed contracts in the Asset Purchase Agreement, which are listed in **Exhibit A** attached hereto (collectively, the "**Assumed Contracts**"), shall be governed by the terms contained in the Sale Order and the Assumed Contracts Order. Any executory contract or unexpired lease that exists between the Debtor and another Person or Entity that is not listed on **Exhibit A** attached hereto (including the Existing Boat Contracts) shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "**Rejected Contracts**"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease.

**7.02** *Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.* Entry of the Confirmation Order, the Sale Order, or the Assumed Contracts Order, as the case may be, shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.01 of this Plan, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.01 of this Plan, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption and assignment by the Debtor of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by the Buyer in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

**7.03** *Inclusiveness.* Unless otherwise specified on **Exhibit A** to the Plan, each executory contract and unexpired lease listed on **Exhibit A** shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on **Exhibit A**.

**7.04** *Cure of Defaults.* Any lessor, lessee, or other party to an Assumed Contract (except those lessors, lessees, or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.01, as contemplated by Section 365(b) of the Bankruptcy Code, shall file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Deadline established by the Bid Procedures Order, asserting all alleged amounts accrued or alleged defaults. Any lessor or other party to an Assumed Contract that fails to file a Cure Claim by the Cure Claim Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtor, the Liquidating Trust, or the Buyer. Any timely filed Cure Claims shall be the

responsibility of the Buyer, and neither the Debtor nor the Liquidating Trust shall have any liability to any Person or Entity on account of any Cure Claims.

**7.05    *Claims Under Rejected Contracts and Unexpired Leases.***

Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor or the Liquidating Trust.  As set forth herein, Accepting Customers are deemed to have waived all Claims, including rejection damage claims as a result of the Debtor's rejection of such customer's Existing Boat Contract, against the Debtor, the bankruptcy estate, and the Liquidating Trust.  With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be thirty (30) days after the Confirmation Date. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 6.

# Article 8
## MEANS OF IMPLEMENTATION OF THE PLAN

**8.01    *General Overview of the Plan.*** The Plan provides for the distribution of the Cash Sale Proceeds and any other recoveries realized by the Debtor or the Liquidating Trustee on account of the Excluded Assets.  The Plan provides for Cash payments to Holders of Allowed Claims, except Holders of Equity Interests, all as more particularly described in Articles 3 and 5 of the Plan. The Plan shall be implemented on the Effective Date.

**8.02    *Sale of Debtor's Assets Pursuant to the Asset Purchase Agreement.*** The Debtor determined that it would be in the best interests of its creditors and the estate to maximize value through a sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code. Absent such a sale, the Debtor will most likely be facing a liquidation under Chapter 7 of the Bankruptcy Code, which would achieve far less for creditors than a sale as a going concern.

Prior to the filing of the Bankruptcy Case, the Debtor received an offer from the Buyer to purchase substantially all of the assets of the Debtor in a sale transaction under Section 363 of the Bankruptcy Code.  This offer was memorialized in the Letter of Intent (as defined in the Asset Purchase Agreement).

On April 29, 2019, the Debtor and SFS entered into an Asset Purchase Agreement, pursuant to which the Debtor agreed to sell to the Buyer, and the Buyer agreed to purchase from the Debtor, the Purchased assets pursuant to Sections 363 and 365 of the Bankruptcy Code free and clear of

any and all Liens, Claims, and Encumbrances, excepting certain Assumed Liabilities and the Permitted Liens.

As set forth in the Asset Purchase Agreement, the consideration to be paid by the Buyer to the Debtor for the Purchased Assets shall be the sum of the following: (i) the cost to build the first five (5) boats on order (estimated to be One Million and 00/100 Dollars ($1,000,000.00)), (ii) the cost to build the next twenty-seven (27) boats on order (estimated to be Three Million Five Hundred Thirty Thousand and 00/100 Dollars ($3,530,000.00)), (iii) the 40' Cat boats tooling completion (estimated to be One Million and 00/100 Dollars ($1,000,000.00)), (iv) the 40' Cat boats production cost for eight (8) boats (estimated to be Two Million Seven Hundred Twenty Thousand and 00/100 Dollars ($2,720,000.00)), (v) the amount of the Assumed Liabilities (excluding, however, any Assumed Liabilities described in Section 2.3(c) of the Asset Purchase Agreement that are already included in subparagraphs (i)-(iv) above), (vi) the aggregate amount of any advances under the DIP Loan plus any other DIP Loan Obligations (excluding, however, any such advances that are already included in subparagraphs (i)-(iv) above), and (vii) an amount not to exceed Fifty Thousand and 00/100 Dollars ($50,000.00) representing the General Unsecured Creditor Carve-Out (collectively, the "**Purchase Price**"); provided, however, that the Purchase Price shall be subject to downward adjustment to the extent that any amounts included in subparagraphs (i)-(iv) above relate to Existing Boat Contracts that are not converted into New Boat Contracts as provided in the Asset Purchase Agreement. The actual amount of the Purchase Price shall be included in the Sale Order. The Purchase Price shall be paid by the Buyer's performance of the New Boat Contracts as contemplated by Section 7.4 of the Asset Purchase Agreement, the Buyer's assumption and performance of the Assumed Liabilities, and the Buyer providing the DIP Loan, in each case as described in the Asset Purchase Agreement, and no portion of the Purchase Price shall be paid in cash (except for any advances to the Debtor under the DIP Loan, the amounts payable in cash described in Section 2.3 of the Asset Purchase Agreement, and the General Unsecured Creditor Carve-Out).

The Asset Purchase Agreement provides that the Buyer shall assume the future payment and performance of certain liabilities, as specifically described in Section 2.3 of the Asset Purchase Agreement. All liabilities under, arising from, or relating to the Assumed Contracts listed on **Exhibit A** to the Assumed Contracts Motion with respect to (i) matters occurring thereunder on or after the Closing Date, and (ii) the Cure Claims constitute Assumed Liabilities pursuant to Article 2.3(a) of the Asset Purchase Agreement. All liabilities that are not Assumed Liabilities are excluded liabilities under the Asset Purchase Agreement.

Pursuant to the Bid Procedures Order, the Bankruptcy Court has established bidding procedures in connection with the sale by the Debtor of substantially all of its assets. The deadline by which any competing bids are to be submitted to the Debtor, its counsel, and the Office of the United States Trustee is **5:00 p.m. (Eastern Daylight Time) on June 7, 2019** (or such later date agreed to by the Debtor). If competing bids are received by the Bid Deadline, an Auction to determine the best and highest offer for the Purchased Assets will be held at **10:00 a.m. (Eastern Daylight Time) on June 11, 2019**, at the offices of Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602.

As provided for in the Bid Procedures Order, SFS was selected by the Debtor and approved by the Bankruptcy Court as the "stalking horse bidder" under the Bid Procedures. Accordingly,

SFS shall be entitled to the Break-Up Fee under the circumstances provided for in the Bid Procedures Order and the Asset Purchase Agreement.

On April 29, 2019, the Debtor filed the Sale Motion and the Assumed Contracts Motion. In the Sale Motion, the Debtor has requested that the Bankruptcy Court enter the Sale Order and approve (i) the execution and delivery by the Debtor of the Asset Purchase Agreement, and (ii) the sale and purchase of the Purchased Assets and the other transactions contemplated by the Asset Purchase Agreement.   In the Assumed Contracts Motion, the Debtor has requested that the Bankruptcy Court enter an Assumed Contracts Order and approve the assumption and/or assignment of certain executory contracts and/or unexpired non-residential real property leases to SFS, subject to the terms and conditions of the Asset Purchase Agreement, free and clear of any and all Liens, Claims, and Encumbrances.  The Closing under the Asset Purchase Agreement is contemplated to occur in conjunction with the Effective Date of the Plan.  A hearing on the Sale Motion shall be held before the Honorable Michael G. Williamson, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Courtroom 8A, Tampa, Florida 33602 on **June 12, 2019 at 10:30 a.m.** (the "**Sale Hearing**").

The above is a brief summary of the material terms of the Asset Purchase Agreement, the Bid Procedures Order, the Sale Motion, and the Assumed Contracts Motion.  Holders of Claims and Equity Interests are encouraged to read the Asset Purchase Agreement, and other relevant documents, in their entirety for a more detailed description.  Each of these documents are on file with the Clerk of the Bankruptcy Court, or are available upon request to Bankruptcy Counsel.

**8.03**   *Effective Date Actions.*  Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 11 of the Plan, on or as of the Effective Date, the Plan shall be implemented and the following actions shall thereafter immediately occur:

(a)   the Closing of the purchase and sale of the Purchased Assets shall occur;

(b)   the appointment of the Liquidating Trustee shall become effective;

(c)   the Liquidating Trust Agreement shall be executed by all parties thereto and, except as otherwise set forth in the Plan, the Liquidating Trust Assets shall be deemed transferred and delivered to the Liquidating Trust;

(d)   all Claims shall be deemed automatically channeled, transferred, and attached solely and exclusivity to the Liquidating Trust; and

(e)   the Debtor and the Liquidating Trustee shall carry out their respective responsibilities under the Plan, including the execution and delivery of all documentation contemplated by the Asset Purchase Agreement, the Plan, and the Plan Documents.

**8.04**   *Transfer of the Debtor's Purchased Assets.*  At the Closing, the Debtor's Purchased Assets shall be transferred to the Buyer free and clear of any and all Liens, Debts,

obligations, Claims, Cure Claims, Liabilities, encumbrances, and all other interests of every kind and nature, except for Assumed Liabilities and the Permitted Liens. To the extent that the foregoing protections differ in any respect from the similar protections contained in the Sale Order, the Sale Order shall control.

**8.05    *Vesting of Property of the Estate in the Liquidating Trust.*** On the Effective Date, except as otherwise expressly provided in the Plan and the Sale Order, all Excluded Assets shall vest in, and become assets of, the Liquidating Trust, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide. The Liquidating Trustee intends to preserve net operating losses to the maximum extent permitted under applicable law. As of the Effective Date, the Liquidating Trustee may use, acquire, and dispose of its property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**8.06    *Continued Limited Corporate Existence; Dissolution.*** The Debtor will continue to exist after the Effective Date for a limited period of time to wind-down the Debtor's affairs. Thereafter, the Debtor will be formally dissolved in accordance with its organizational documents.

**8.07    *Corporate Action.*** All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Equity Holders, board of directors, or board of managers of the Debtor.

**8.08    *Section 1146 Exemption.*** Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtor, the Estate, or the Liquidating Trust pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**8.09    *Pursuit of Causes of Action.***

On the Effective Date, the Causes of Action shall be vested in the Liquidating Trust, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court; provided, however, that Kevin Barker shall continue to direct the prosecution of the Yellowfin Lawsuit, and fifty percent (50%) of any recovery from the Yellowfin Lawsuit shall inure to Kevin Barker and the remaining fifty percent (50%) shall inure to the Buyer, as it constitutes a Purchased Asset. The Yellowfin

Lawsuit shall not be property of the Liquidating Trust. The Liquidating Trustee will have the right, in his sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court except as provided in this Article 8. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, EXCEPT AS SET FORTH IN THE PLAN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS INCLUDING, WITHOUT LIMITATION, ANY CAUSES OF ACTION DESCRIBED IN THE SCHEDULES, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUSTEE. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless the Plan provides otherwise. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Liquidating Trustee does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Trust. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Liquidating Trustee, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata* or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

The Liquidating Trust shall remain open, even if the Bankruptcy Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the assets of the Liquidating Trust have been distributed as provided in this Plan.

The Debtor and the Liquidating Trustee reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

**8.10**   ***Prosecution and Settlement of Causes of Action.***  The Liquidating Trustee (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Cause of Action which the Debtor had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action.  From and after the Effective Date, the Liquidating Trustee shall be authorized, pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code, to compromise and settle any Cause of Action or objection to a Claim in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Cause of Action or objection to a Claim originally asserted in an amount equal to or less than $25,000.00, then the Liquidating Trustee may settle the Cause of Action or objection to Claim and execute necessary documents, including a stipulation of settlement or release, subject to notifying the United States Trustee; provided, however, that if the United States Trustee indicates its approval or does not provide the Liquidating Trustee with an objection to the proposed settlement within ten (10) days after it receives notice of such settlement in writing, then the Liquidating Trustee shall be authorized to accept and consummate the settlement; and provided further, however, that if a timely written objection is made by the United States Trustee to the proposed settlement, then the settlement may not be consummated without approval of the Bankruptcy Court in accordance with Bankruptcy Rule 9019; and (ii) if the resulting settlement involves a Cause of Action or objection to a Claim originally asserted in an amount exceeding $25,000.00, then the Liquidating Trustee shall be authorized and empowered to settle such Cause of Action or objection to Claim only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and after notice to the Notice Parties. Notwithstanding anything herein to the contrary, nothing herein shall obligate or require the Liquidating Trustee to pursue any Causes of Action.

**8.11**   ***Effectuating Documents; Further Transactions.***  Prior to the Effective Date, the manager of the Debtor (and, on and after the Effective Date, the Liquidating Trustee) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

# Article 9
## PROVISIONS GOVERNING DISTRIBUTIONS

**9.01**   ***Distributions.***  As soon as reasonably practicable (as determined by the Liquidating Trustee) on or after the Effective Date, the Liquidating Trustee shall make the Distributions required under the Plan to Holders of Allowed Claims as and when required by the terms of the Plan.

**9.02   *Determination of Claims.***

From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to, in its sole discretion, to file, settle, compromise, withdraw, or litigate to judgment all objections to Claims.  Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than sixty (60) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Liquidating Trustee), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims.  If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 6 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) sixty (60) days following the Effective Date or (b) the date sixty (60) days after the Liquidating Trustee receives actual notice of the filing of such Claim.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or the Liquidating Trustee, as the case may be, effect service in any of the following manners:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution.  The Debtor or the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

### 9.03    *Distributions as to Allowed Claims in Class 6.*

Each Holder of an Allowed Unsecured Claim in Class 6 shall receive a Cash Distribution, on the applicable Distribution Date, in the amount provided for in Article 5 of the Plan.

Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 6 unless and until such Disputed Claim becomes an Allowed Claim.  At such time that such Disputed Claim becomes an Allowed Class 6 Claim, the Holder of such Allowed Class 6 Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 6 Claim is subject to a proceeding against it by the Liquidating Trustee under Section 502(d) of the Bankruptcy Code, then the Liquidating Trustee (in his sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

Distributions to a Holder of an Allowed Claim in Class 6 shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor or the Liquidating Trustee at the time of the Distribution, unless the Liquidating Trustee has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules.  The Liquidating Trustee shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

### 9.04    *Unclaimed Distributions.*

If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Liquidating Trustee shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Trustee due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Trustee as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

Any unclaimed Distribution as described above sent by the Liquidating Trustee shall become the property of the Liquidating Trust.

**9.05**     *Transfer of Claim.*   In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Liquidating Trustee in writing of such transfer and provide sufficient written evidence of such transfer.  The Liquidating Trustee shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Liquidating Trustee shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

**9.06**     *One Distribution per Holder.*   If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

**9.07**     *Effect of Pre-Confirmation Distributions.*   Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor or the Liquidating Trust to such Holder under the Plan.

**9.08**     *No Interest on Claims.*   Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Disputed Claim becomes an Allowed Claim.

**9.09**     *Compliance with Tax Requirements.*   In connection with the Plan, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

**9.10**     *De Minimis Distributions on Account of Class 6 Unsecured Claims.* To avoid the disproportionate expense and inconvenience associated with making *de minimus* distributions, the Liquidating Trustee will not be required to make, and will be excused from making, distributions in amounts of less than twenty-five dollars ($25.00) each to Holders of Allowed Class 6 Claims.

# Article 10
## LIQUIDATING TRUST

**10.01** *Appointment of Liquidating Trustee*. Appointment of the Liquidating Trustee shall be subject to approval of the Bankruptcy Court. The Liquidating Trustee shall be independent of the Debtor and creditors. The Liquidating Trustee shall file an affidavit demonstrating that such Person is disinterested as defined in Section 101(14) of the Bankruptcy Code; provided, however, if such Person is a Professional, any Allowed Administrative Expense Claim shall not render such Person non-disinterested. If approved by the Bankruptcy Court, the Person so designated shall become the Liquidating Trustee on the Effective Date. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement and in the Plan.

**10.02** *Establishment of Liquidating Trust*. On the Effective Date, the Liquidating Trust and the Liquidating Trust Agreement shall be deemed effective without any further action by any party. The Liquidating Trust Agreement shall establish the Liquidating Trust which shall be a distinct legal entity from the Debtor, which shall have no liability whatsoever for any obligations of the Liquidating Trust pursuant to the Plan, the Liquidating Trust Agreement or otherwise, and is intended to qualify as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B. On the Effective Date, except as otherwise expressly provided in the Plan and the Sale Order, all Excluded Assets shall vest in and become assets of, the Liquidating Trust, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide.

**10.03** *Irrevocable Trust*. Any and all funds or assets in the Liquidating Trust shall be held in an irrevocable trust for distribution to Holders of Allowed Claims. Such distributions shall be made in accordance with the procedures set forth in the Plan and the terms of the Liquidating Trust Agreement, and the Confirmation Order shall contain appropriate language to that effect. Once funds or assets are deposited into the Liquidating Trust, they shall no longer be Property of the Debtor or any other Person or Entity and none of the foregoing shall have any claim to said funds or assets.

**10.04** *Channeling Injunction*. On the Effective Date, all Claims shall be automatically deemed channeled, transferred and attached solely and exclusively to the Liquidating Trust, and the sole and exclusive right and remedy available to Creditors shall be the entitlement, in accordance with the Plan and the Liquidating Trust Agreement, to assert Claims solely and exclusively against the Liquidating Trust. The transfer to, vesting in and assumption by the Liquidating Trust of the Liquidating Trust Assets, as contemplated in the Plan and the Liquidating Trust Agreement, shall, as of the Effective Date, discharge, release and extinguish all obligations and Liabilities of the Debtor for and in respect of all Claims. The Liquidating Trust shall assume sole responsibility and liability for all Claims and such Claims shall be paid from the Liquidating Trust Assets as described in this Article 10. Notwithstanding anything to the contrary contained in the Plan or in the Disclosure Statement, the Debtor shall have no liability with respect to any Claims or with respect to any operations of the Debtor prior to the Effective Date. The Confirmation Order shall contain appropriate language incorporating the foregoing and permanently enjoining any Holder of any Claim from taking any action in violation of this Article 10. The entry of the Confirmation Order will act as a full and complete discharge of all Claims,

Debts, Liabilities, and/or interests arising from, relating to or in connection with Claims, except to the extent that the Liquidating Trust Agreement or the Plan provides a mechanism for the payment or resolution thereof.

**10.05** *Cash Distributions from the Liquidating Trust*.   Pursuant to and subject to the Liquidating Trust Agreement, each Holder of an Allowed Claim shall receive, in exchange for such Holder's Allowed Claim, units of beneficial interest in the Liquidating Trust which will thereafter represent the distribution such Holder is entitled to receive under the Plan.   Upon issuance, the units of beneficial interest shall not be certificated and are not transferable (except as otherwise provided in the Liquidating Trust Agreement). Under Section 1145 of the Bankruptcy Code, the issuance of units of beneficial interest under the Plan shall be exempt from registration under the Securities Act and applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the SEC.

Each Holder of an Allowed Claim shall receive, on the Distribution Date, a Cash distribution out of the Liquidating Trust Assets as set forth in the Plan; provided, however, that if such Holder's Claim has been bifurcated into an Allowed Claim and a Disputed Claim because the amount of the Claim specified on such Holder's Proof of Claim exceeds the amount of the corresponding Claim scheduled in the Schedules, then such Holder's Disputed Claim shall be deemed an Allowed Claim for distribution purposes on such Distribution Date, unless the Liquidating Trustee files an objection to such Disputed Claim prior to the Distribution Date; and provided, further, however, if, on the Distribution Date, any Disputed Claims remain, then the Liquidating Trustee shall withhold from any such distribution the amount of funds that would be necessary to make the same proportionate distribution to the Holders of Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Claim. At such time that the Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the distribution to which such Holder is then entitled under the Plan.

**10.06** *Duties of the Liquidating Trustee*.   The Liquidating Trustee shall have the following duties under the Liquidating Trust Agreement:

> (a)     resolve any pending objections to Claims, and file or otherwise assert any objections necessary or appropriate to resolve all Disputed Claims;

> (b)     make any required distribution from the Liquidating Trust to the Holders of Allowed Claims, in accordance with the terms and provisions of the Plan and the Liquidating Trust Agreement;

> (c)     pursue, investigate, prosecute, compromise and otherwise resolve the Causes of Action;

> (d)     administer the Liquidating Trust Assets;

(e)      pursue any assets of the Debtor that should be transferred to the Liquidating Trust;

(f)      provide annual financial information and other periodic reports to the Holders of Allowed Claims, in accordance with the terms and provisions of the Liquidating Trust Agreement; and

(g)      perform such other duties as may be set forth in the Liquidating Trust Agreement or elsewhere in the Plan.

The Liquidating Trust Agreement shall also provide for the Liquidating Trustee to perform duties commonly performed by, and have the powers commonly provided to, such trustees, as more specifically set forth in the Liquidating Trust Agreement, including, among other things, obtaining tax identification number(s) for the Liquidating Trust, preparing and filing appropriate federal and state tax returns for the Liquidating Trust, opening a bank account for the Liquidating Trustee, maintaining records pertaining to the units of beneficial interest of the Holders of all Allowed Claims in the Liquidating Trust, and retaining professionals to represent the interests of the Liquidating Trust. For purposes of performing all of the foregoing, as well as for purposes of prosecuting to conclusion objections to Claims and Causes of Action only, the Liquidating Trustee shall have hereunder the status of a representative of the Estate under 11 U.S.C. § 1123(b)(3)(B). Until the Bankruptcy Case is closed, the Liquidating Trustee shall submit any proposed actions or compromises to the Bankruptcy Court as required by the terms of the Liquidating Trust Agreement, upon notice to the Notice Parties and such other parties as the Bankruptcy Court may direct (including any Holders of Allowed Claims who provide the Liquidating Trustee with written notice of their request to receive notice of such activities). The United States Trustee shall not be required to supervise the Liquidating Trustee, but shall have standing to seek removal of the Liquidating Trustee.

**10.07** *Expenses of the Liquidating Trust*. All costs and expenses associated with the administration of the Liquidating Trust shall be the sole responsibility of and paid by the Buyer within a reasonable time following the Liquidating Trustee's presentation of an invoice to the Buyer. Under no circumstances shall any Liquidating Trust Expenses be an obligation of the Debtor or any other Person or Entity.

**10.08** *Investment of Funds*. The Liquidating Trustee shall invest the funds in the Liquidating Trust; provided, however, that the investment shall only be in United States government securities with a maturity date of ninety (90) days or less, money market funds or other similar short-term liquid investments. Any and all interest earned on the funds in the Liquidating Trust shall be added to the principal amount of the funds in the Liquidating Trust and shall be available, together with the principal amount, for distributions in accordance with the provisions of this Article 10.

**10.09** *Federal Income Tax Treatment*. For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries (i.e., Holders of

Allowed Claims) be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.

**10.10** *Termination of Liquidating Trust.* The Liquidating Trust shall terminate as provided in the Liquidating Trust Agreement.

# Article 11
### CONDITIONS PRECEDENT TO
### CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

**11.01** *Conditions Precedent to Confirmation of the Plan.* The following is a condition precedent to Confirmation of the Plan: (a) the Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

**11.02** *Conditions Precedent to the Effective Date.* The Plan shall not be consummated and the Effective Date shall not occur unless each of the following conditions has been satisfied following the Confirmation Date or waived by the Debtor:

    (a)    The Sale Order shall be a Final Order;

    (b)    The Assumed Contracts Order shall be a Final Order;

    (c)    The Confirmation Order (in form and substance satisfactory to the Debtor) shall be a Final Order; and

    (d)    The Closing shall have occurred.

**11.03** *Waiver.* The Debtor retains the right to waive any condition precedent to the Confirmation of the Plan or the Effective Date by filing a notice in the Bankruptcy Case. Any such waiver shall be effective immediately.

**11.04** *Notice of the Effective Date.* Promptly following the satisfaction, or the waiver by the Debtor, of all of the conditions set forth in Article 11.02, the Debtor shall file a notice (the "**Effective Date Notice**") with the Bankruptcy Court designating the Effective Date. The Debtor shall serve the Effective Date Notice on all of the Notice Parties.

# Article 12
### EXCULPATION FROM LIABILITY, GENERAL INJUNCTION, AND RELEASES

**12.01** *Discharge of the Debtor.* Pursuant to Section 1141(d)(3) of the Bankruptcy Code, the Debtor shall not receive a discharge.

**12.02** *Exculpation from Liability.* <u>**The Debtor and its respective Postpetition officers, including Kevin Barker, and the Professionals for the Debtor (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation,**</u>

**preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 12.02 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 12.02 shall not release, or be deemed a release of, any of the Causes of Action.**

12.03   *General Injunction.* Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:  (a) commencing or continuing in any manner any action or other proceeding against the Debtor or the Liquidating Trust or their respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Liquidating Trust or their respective properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or the Liquidating Trust or their respective properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Liquidating Trust; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or the Liquidating Trustee under the Plan and the Plan Documents and the other documents executed in connection therewith. The Debtor and the Liquidating Trustee shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 12.03 shall not release, or be deemed a release of, any of the Causes of Action.

**12.04   *Term of Certain Injunctions and Automatic Stay.***

All injunctions or automatic stays for the benefit of the Debtor pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtor affirmatively elects to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elect to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtor as provided herein.

**12.05   *No Liability for Tax Claims.***   Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor, the Liquidating Trust, or their respective officers, employees, or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

# Article 13
## RETENTION OF JURISDICTION

**13.01   *General Retention.***   Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**13.02   *Specific Purposes.***   In addition to the general retention of jurisdiction set forth in Article 13.01, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

> (a)     to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims;

(b)     to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Case, the Plan or the Confirmation Order (including regarding the effect of any discharge, exculpation, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

(c)     to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Sections 328, 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals incurred after the Confirmation Date unless an objection to such fees and expenses has been made by the Liquidating Trustee;

(d)     to determine any and all motions pending as of the Effective Date (including pursuant to the Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any Cure Claims;

(e)     to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any Cure Claims;

(f)     to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtor or the Liquidating Trustee, including approval of proposed settlements thereof;

(g)     to enforce, interpret and administer the terms and provisions of the Plan and the Plan Documents;

(h)     to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(i)     to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or the Estate;

(j)     to assure the performance by the Liquidating Trustee of its obligations under the Plan or the Liquidating Trust Agreement;

(k)     to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(l)     to resolve any disputes concerning any exculpation of, or limitation of liability as to, a non-debtor (including any Professional) hereunder or the injunction against acts, employment of process or actions against such non-debtor (including any Professional) arising hereunder;

(m)    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

(n)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

(o)     to construe, interpret and enforce the Sale Order, and to determine all questions and disputes regarding the Sale Order and the transactions approved thereby, including any disputes with respect to the Asset Purchase Agreement;

(p)     to construe, interpret and enforce the Assumed Contracts Order, and to determine all questions and disputes regarding the Assumed Contracts Order and the transactions approved thereby, including any disputes with respect to thereto;

(q)     to determine all questions and disputes regarding title to the Assets of the Debtor or the Estate or the assets of the Liquidating Trust;

(r)     to review and approve any sale or transfer of assets or property by the Debtor or the Liquidating Trust, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers;

(s)     to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Asset Purchase Agreement, the Sale Order, or the Plan;

(t)     to resolve any determinations which may be requested by the Debtor or the Liquidating Trustee of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

(u)     to resolve any disputes concerning any exculpation of or limitation of liability as to a non-debtor hereunder or the injunction against acts, employment of process or actions against such non-debtor arising hereunder;

(v)     to determine any and all matters, disputes and proceedings relating to the Excluded Assets or the Causes of Action, whether arising before or after the Effective Date;

(w)     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity or Governmental Unit with consummation, implementation or enforcement of the Plan, the Confirmation Order, or the Asset Purchase Agreement;

(x)     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(y)     to determine any other matters that may arise in connection with or relating to the Asset Purchase Agreement, the Plan, the Disclosure Statement, or the Confirmation Order, whether arising before or after the Effective Date;

(z)     to enter such orders as are necessary to implement and enforce the injunctions described herein;

(aa)    to interpret and enforce the obligations of any purchaser of any Assets of the Debtor;

(bb)    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(cc)    to enforce all indemnification obligations under the Asset Purchase Agreement; and

(dd)    to enter an order concluding and terminating the Bankruptcy Case.

    **13.03   *Closing of the Bankruptcy Case.*** In addition to the retention of jurisdiction set forth in Articles 13.01 and 13.02, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case to enter an order reopening the Bankruptcy Case after it has been closed.

# Article 14
## MODIFICATION OF PLAN AND
## CONFIRMATION OVER OBJECTIONS

**14.01** *Modification of Plan.*

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

After the entry of the Confirmation Order, the Debtor (prior to the Effective Date) or the Liquidating Trustee (on and after the Effective Date) may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor or the Liquidating Trustee (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interests under the Plan.

After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtor (prior to the Effective Date) or the Liquidating Trustee (on and after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Liquidating Trustee (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and the Class of Claims or Equity Interests materially adversely affected and a hearing, (c) such modification is accepted by (i) at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class of Claims adversely affected by such modification or (ii) at least two-thirds in amount of Allowed Equity Interests actually voting in each Class of Equity Interests adversely affected by such modification, and (d) the Debtor or the Liquidating Trustee (as the case may be) complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

Notwithstanding anything to the contrary contained in this Article 14.01 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor (prior to the Effective Date) or the Liquidating Trustee (on and after the Effective Date).

**14.02** *Confirmation Over Objections.* In the event any Impaired Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Article 15.02, the Debtor hereby requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation

Hearing.  No such modifications shall require any re-solicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

# Article 15
## MISCELLANEOUS PROVISIONS

**15.01**   *No Admissions.*   The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor.  Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor as applicable in any manner prior to the Effective Date.

**15.02**   *Revocation or Withdrawal of the Plan.*   The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**15.03**   *Standard for Approval of the Bankruptcy Court.*   In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

**15.04**   *Further Assurances.*   The Debtor and the Liquidating Trustee agree, and are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**15.05**   *Headings.*   The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**15.06**   *Notices.*   All notices, requests or other communications in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States first class mail, postage prepaid, or by overnight delivery by a recognized courier service, and addressed as follows:  if to the Debtor, c/o Kevin Barker, 7910 25th Court East, Suite 115, Sarasota, Florida 34243, with a copy to Amy Denton Harris, Esquire, Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602 and if to the Liquidating Trustee, c/o Mark Healy, Moecker & Associates, 841 Prudential Drive, 12th Floor, Jacksonville, Florida 32207. Copies of all notices under the Plan to any party shall be given to each of the parties listed above contemporaneously with the giving of such notice.  Any of the parties listed above may change

the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court.

**15.07   *Governing Law.*** Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**15.08   *Limitation on Allowance.*** No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

**15.09   *Estimated Claims.*** To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**15.10   *Consent to Jurisdiction.*** Upon any default under the Plan, the Debtor and the Liquidating Trustee consent to the jurisdiction of the Bankruptcy Court and agree that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default. By accepting any Distribution under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim or Cure Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtor, the Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 13 of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 13 of the Plan.

**15.11   *Setoffs.*** Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Liquidating Trustee may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor or the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Debtor or the Liquidating Trustee may have against the Holder of such Claim.

**15.12   *Successors and Assigns.*** The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**15.13   *Modification of Payment Terms.*** The Liquidating Trustee reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**15.14    *Entire Agreement.***  The Plan and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.  No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for therein or as may hereafter be agreed to by such Person or Entity in writing.

**15.15    *Severability of Plan Provisions.***  If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**15.16    *Confirmation Order and Plan Control.***  To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor or the Liquidating Trustee and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

**15.17    *Computation of Time.***  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**15.18    *Substantial Consummation.***  The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Liquidating Trustee of the Distributions described in Article 9.01 of the Plan.

**15.19    *No Liability for Solicitation.***  Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

*[SIGNATURE PAGE FOLLOWS]*

Tampa, Florida
Dated as of May 24, 2019.

**BARKER BOATWORKS, LLC**

By: _____

Kevin Barker
Its Manager

*/s/ Amy Denton Harris*
Amy Denton Harris
Florida Bar No. 634506
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: aharris@srbp.com
Counsel for Debtor and Debtor in Possession

**Exhibit A**

**List of Assumed Contracts**

1. Michael Peters Yacht Design, Design Contract for Design # 424 dated July 10, 2014, between Michael Peters Yacht Design, Inc. and the Debtor

2. Michael Peters Yacht Design, Design Contract for Design # 456 dated 2017, between Michael Peters Yacht Design, Inc. and the Debtor

3. Equipment Lease Agreement dated May 4, 2016, between De Lage Landen Financial Services, Inc. and the Debtor, for the lease of a pneumatic forklift

4. Lease dated August 25, 2014, between 2550 TR, LLC, as landlord, and the Debtor, as tenant, for the lease of the real property located at SRQ Commerce Park, 7910 25th Court Street E., Suite 115, Sarasota, Florida 34243

5. Lease Agreement dated October 15, 2014, between R.P.W. of Sarasota, Inc., as landlord, and the Debtor, as tenant, as amended by the Amendment to Lease (undated) and the Second Amendment to Lease dated October 22, 2018, for the lease of the real property located at 2188 51st Street, Sarasota, Florida 34234