ORDERED.

**Dated:  July 25, 2019**

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Barker Boatworks, LLC,

     Debtor.

_____/

Case No. 8:19-bk-3138-MGW
Chapter 11

**MEMORANDUM OPINION AND ORDER ON EMERGENCY
MOTION OF SEA FORCE IX, INC. FOR ADEQUATE PROTECTION**

THIS CASE came before the Court for hearing on June 12, 2019, to

consider the Emergency Motion of Sea Force IX, Inc. ("Sea Force") for

Adequate Protection.[1]  Sea Force's Motion was filed in response to the

Debtor's Emergency Motion for Turnover of Property of the Estate.[2]

The Motions relate to certain boat molds that were owned by the

Debtor, but possessed by Sea Force to use in the manufacture of fiberglass

parts for boats built by the Debtor.  The Debtor sought the turnover of the

---

[1] Doc. 113.
[2] Doc. 102.

molds in order to deliver them to a third party that has purchased its assets. Sea Force contends that it holds a lien on the molds pursuant to § 713.596 of the Florida Statutes, and therefore requested adequate protection for its lien as a condition to turnover.

The Court has considered § 713.596 (the molder's lien statute) and the record in this case, and determines that Sea Force acquired a possessory lien on the molds when it performed work for the Debtor and was not paid. The lien was enforceable for as long as Sea Force retained possession of the molds, without further notice or action to perfect the interest. Sea Force was in possession of the molds on the date that the Debtor filed its bankruptcy petition, and therefore holds a valid and enforceable lien on the proceeds of the molds.

### A. Background

The Debtor is in the business of designing and building custom boats. In September of 2018, the Debtor entered into an agreement with Sea Force for Sea Force to manufacture certain parts for the Debtor's boats. The Debtor's boat molds were moved to Sea Force's facility to enable Sea Force to manufacture the parts, and Sea Force subsequently issued a series of invoices for its manufacturing services. In February of 2019, Sea Force moved the molds to a temporary storage location.[3]

---

[3] Doc. 118.

On April 5, 2019, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

On April 29, 2019, the Debtor filed a motion for authority to sell substantially all of its assets to an entity known as Strike Force Seven LLC ("SFS") pursuant to an Asset Purchase Agreement signed on the same date.[4] The proposed purchase price under the Asset Purchase Agreement is approximately $9,800,000.00.   The assets subject to the sale included the boat molds that had been moved to Sea Force's facility under the Debtor's manufacturing agreement with Sea Force.

On June 4, 2019, the Debtor filed a motion for turnover of the boat molds from Sea Force so that they could be delivered to SFS pursuant to the proposed sale.[5]  In response to the Debtor's Motion, Sea Force asserted that it held a perfected molder's lien on the molds in the amount of $27,917.82, and therefore requested adequate protection for its lien as a condition to turnover.[6]

On June 13, 2019, the Court entered an order authorizing the sale to SFS,[7] and also entered a separate order granting the Debtor's Motion for Turnover.[8]  Generally, the orders provide for the removal of the molds from

---

[4] Doc. 59.
[5] Doc. 102.
[6] Doc. 113.
[7] Doc. 123.
[8] Doc. 125.

3

Sea Force's facility, and for SFS to escrow the sum of $27,917.82 pending the Court's determination of the validity and extent of Sea Force's lien.

## B. Statutory molder's lien

Sea Force asserts that it holds a lien on the boat molds pursuant to § 713.596 of the Florida Statutes.  Section 713.596 defines a "molder" as "any person who fabricates, casts, or otherwise makes or uses a mold for the purpose of manufacturing, assembling, casting, fabricating, or otherwise making a product for a customer."[9]  Subsections (2) and (3) of § 713.596 provide in part:

> ### § 713.596. Molder's liens
>
> . . .
>
> **(2) Liens. —**
>
> (a) *A molder that has not received payment from a customer in accordance with the terms of the contract between the two has a lien on a mold in the molder's possession which belongs to that customer.*  The lien is for the balance due the molder from the customer for any work that the molder has performed for the customer in manufacturing or fabricating products for the customer using the mold and for the value of all material related to such work.  *The molder may retain possession of the mold until the debts are paid.*
>
> (b) Before enforcing the lien, the molder must notify the customer in writing of the claim of lien. . . . The notice must state that the molder claims a lien for the balance due for work that the molder has performed in manufacturing or fabricating products for the customer using the mold and for the value of related materials as is specified in the notice.  Additionally, the notice must include a statement of the amount of the balance owed, a demand for payment, and a statement of the location of

---

[9] Fla. Stat. § 713.596(1)(c).

the mold.  Finally, the notice must include the following warning in conspicuous type and in substantially the following form:

> WARNING: YOUR FAILURE TO PAY THE UNPAID BALANCE AS STATED HEREIN WILL RESULT IN THE IMPOSITION OF A LIEN ON THE MOLD DESCRIBED HEREIN AND IN THE SALE OF THAT MOLD AS PROVIDED BY LAW.

> (c) If the customer does not pay the amount due as stated in the notice within 60 days after the date of receipt of the notice, the molder may sell the mold at a public auction. . . .

> **(3) Sale.—**

> (a) Before a molder may sell a mold, the molder must notify the customer and any holder of a security interest perfected in this state of the intended sale. . . .[10]

It does not appear that § 713.596 has been interpreted by any Florida court.  Sea Force contends that a molder's lien under § 713.596 is a possessory lien that arises when the molder performs services using the customer's molds, and that the molder's possession of the molds is the only act required by the statute to perfect the lien.  The Debtor does not expressly dispute the creation of a possessory lien under the statute, but contends that a molder must comply with the notice provision of § 713.596(2)(b) before it is entitled to assert a lien against the molds or the proceeds of the molds.

---

[10] Fla. Stat. § 713.596(2),(3)(emphasis added).

### 1. Enforceable by possession

The molder's lien statute appears in Part II of Chapter 713 of the Florida Statutes, which governs "miscellaneous liens" in Florida.  Section 713.74 of the Florida Statutes relates to the acquisition of miscellaneous liens under Part II.  Section 713.74 provides that such liens shall be acquired "by the performance of the labor or the furnishing of the materials," and that the lien "shall continue as long as the possession continues, not to exceed 3 months after performance of the labor or furnishing the material."[11]

Section 85.011 of the Florida Statutes relates to the enforcement of miscellaneous liens acquired under Part II of Chapter 713.  Section 85.011 provides that such miscellaneous liens on personal property are enforceable by five separate methods, including "retention of possession of the property on which the lien has attached for a period of not exceeding 3 months by the person entitled to the lien, if the person was in possession at the time the lien attached."[12]  The statute provides for a three-month possessory period, after which the owner may seek possession of the property, but the lien does not expire after three months and the lien rights continue beyond that

---

[11] Fla. Stat. § 713.74.  A "lien on personal property upon which labor or services have been provided arises at the time such labor or services are provided."  *In re Tradewinds Airlines, Inc.*, 394 B.R. 614, 618 (Bankr. S.D. Fla. 2008)(discussing a mechanic's lien under Fla. Stat. § 713.58).
[12] Fla. Stat. § 85.011.

period.[13]  In other words, if the owner does not recover the property at the end of three months, the lien continues for as long as the lien-holder retains possession.[14]

Section 713.596, the molder's lien statute, provides that an unpaid molder "has a lien on a mold in the molder's possession," and that the unpaid "molder may retain possession of the mold until the debts are paid."[15]  Under §§ 713.596, 713.74, and 85.011, therefore, a molder's lien is acquired when a molder performs services for its customer, and is enforceable by the molder's continued possession of the molds until it is paid.

### 2. Enforceable against third parties

A molder's lien is enforceable by possession of the molds, and no further act is required to perfect the lien.  Through its possession of the property, the holder of a possessory lien provides actual notice to third parties and the public of its interest.[16]

Except for a provision regarding the priority of such liens, statutory liens for services are excluded from coverage under Florida's Uniform Commercial Code.[17]  The liens are dependent on possession for their

---

[13] *Associates Commercial Corporation v. Ross*, 465 So. 2d 663, 665 (Fla. 4th DCA 1985).
[14] *Eastern Airlines Employees Federal Credit Union v. Lauderdale Yacht Basin, Inc.*, 334 So. 2d 175, 177 (Fla. 4th DCA 1976).
[15] Fla. Stat. § 713.596(2)(a).
[16] *HSBC Bank USA, N.A. v. Perez*, 165 So. 3d 696, 700-01 (Fla. 4th DCA 2015)(discussing possession as a means of perfecting a security interest in a promissory note).
[17] Fla. Stat. § 679.1091(4)(b).

effectiveness,[18] and have priority over a security interest in the property unless the creating statute provides otherwise.[19]

Additionally, a person who acquires such a statutory lien for services "has a lien against the property as against subsequent purchasers and creditors without notice so long as the lienor continues in possession of the property upon which the lien is claimed."[20]

### 3. Enforceable without pre-sale notice

Under Florida's molder's lien statute, an unpaid molder "has a lien" on molds in the molder's possession which belong to its customer.[21]  A molder's lien arises automatically when the molder performs work and is not paid, and is perfected by possession.[22]

Florida's molder's lien statute also provides that the molder must notify its customer in writing "before enforcing the lien."  First, the molder must notify the customer of the amount owed and warn the customer that its failure to pay the balance will result in the sale of the mold.  Second, if

---

[18] *Plasti-World Products, Ltd. v. Burgundy Products Mfg.*, 1999 WL 1270714, at *6 (N.D. Ill.)(In discussing the Illinois Tool and Die Lien Act, the Court stated that "[p]ossession of collateral by a creditor serves much the same purpose as filing a financing statement; it puts parties on notice that that creditor may hold an interest in the collateral.").
[19] Fla. Stat. § 679.333.
[20] *Eastern Airlines Employees Fed. Credit Union v. Lauderdale Yacht Basin, Inc.*, 334 So. 2d at 177.
[21] Fla. Stat. § 713.596(2)(a).
[22] *See, e.g., In re Cornerstone Products, Inc.*, 2007 WL 4298745, at *6 (Bankr. E.D. Tex.), and *In re Flue Gas Resources, Inc.*, 77 B.R. 628, 630-31 (Bankr. N.D. Ohio 1987).

the customer does not pay within sixty days, the molder must notify the customer and any other secured creditors of the intended sale.[23]

Generally, the statute allows the molder to sell the molds at public auction if the customer does not pay the molder for its work. The pre-sale notices required by the statute are directed to the customer and any creditors with an interest in the molds, and intended to inform them of the molder's decision to proceed with the sale. But the notices do not affect the validity and perfection of the possessory lien, and do not affect the molder's rights as the holder of a perfected lien.

In *Basler Electric Company v. Fortis Plastics, LLC*,[24] a plastics processor held a statutory lien on certain tooling under the Illinois Tool and Die Act, and the owner of the tooling challenged the lien because the processor never gave written notice of its claim of lien under the statute. The Court rejected the owner's challenge, finding that the statute provided for the creation and attachment of the possessory lien without any notice by a processor, and that no notice was required until the processor decided to enforce the lien under the statute. In *Basler*, therefore, the Court concluded that the processor "automatically obtained a lien on the tools upon their receipt until the time that [the owner] paid its balance," and that

---

[23] Fla. Stat. § 713.596(2)(b),(c).
[24] *Basler Electric Co. v. Fortis Plastics, LLC*, 2013 WL 5347349 (S.D. Ill.).

9

the processor "was not required to give notice to [the owner] *until it decided to enforce the lien by selling the tools*."[25]

A prior decision in *In re Outboard Marine Corporation*[26] held that a fabricator was barred from recovering the proceeds of certain tooling because it had not provided notice of its statutory lien before seeking to "enforce" it.  But *Outboard Marine's* interpretation of the statute is "contrary to the way in which possessory liens traditionally attach" and function.[27]  Statutory liens for services generally attach when work is performed on goods in the fabricator's possession, without any notice to the owner.[28]  The fabricator may retain possession of the property for as long as it remains unpaid, again without notice to the customer.[29]  In other words, a fabricator or other holder of a possessory lien is not required to provide notice to its customer until it decides to enforce the lien "through a lien sale" under the statute.[30]

In this case, Sea Force held a molder's lien on the Debtor's molds under § 713.596 of the Florida Statutes, and was in possession of the molds at the time that the Debtor filed its bankruptcy case.  Sea Force was not

---

[25] *Basler Electric Co.*, 2013 WL 5347349, at *4(emphasis added).

[26] *In re Outboard Marine Corp.*, 304 B.R. 844, 866 (N.D. Ill. 2004).

[27] *Basler Electric Co.*, 2013 WL 5347349, at *4.

[28] *Plasti-World Products, Ltd. v. Burgundy Products Mfg.*, 1999 WL 1270714, at *6.  *See In re S.M. Acquisition Co.*, 2005 WL 6292653, at *17 (N.D. Ill.)(*Plasti-World Products* stands for the proposition that "a lien arises under the Act at the time work is performed, and not when notice is given.").

[29] *Basler Electric Co.*, 2013 WL 5347349, at *4.

[30] *Id.*(citing *Hausen v. PS Illinois Trust*, 2012 WL 266169, at *7 (N.D. Ill.)).

required to notify the Debtor of its claim of lien until it decided to enforce the possessory lien through a sale of the molds, and the absence of such notice does not affect the validity and perfection of its lien under the statute.

### C. Motion for adequate protection

The lien claimed by Sea Force is a statutory, possessory lien under § 713.596 of the Florida Statutes.  Section 545(2) of the Bankruptcy Code generally provides that a statutory lien may be avoided to the extent that the lien is not perfected or enforceable at the commencement of the case against a bona fide purchaser of the property.[31]

With respect to a molder's statutory lien, possession is the *sine qua non* of the lien.[32]  Possession of the property provides "notice to the world" of the molder's interest in the molds, and thereby protects the molder against third parties who may acquire competing interests in the molds.[33]

Such a statutory lien for services, which remains enforceable as long as the creditor retains possession of the property, is not the type of statutory lien that is avoidable under § 545.[34]  If the property is possessed

---

[31] 11 U.S.C. § 545(2).

[32] *In re Garland Corp.*, 6 B.R. 452, 454 (Bankr. D. Mass. 1980)(construing Fla. Stat. § 713.74)(citing *Aviation Investments, Inc. v. Cameron*, 350 F.2d 959 (5th Cir. 1965)).

[33] *In re Flue Gas Resources, Inc.*, 77 B.R. at 631(Ohio's molder's lien statute, found at OHIO REV. CODE, § 1333.31); *W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.*, 1997 WL 476288, at *2 (E.D. Pa.)(Indiana's Fabricator's Lien statute, found at IND. CODE § 32-8-37-1, *et seq*.).

[34] *In re Lott*, 196 B.R. 768, 777 (Bankr. W.D. Mich. 1996)(statutory artisan's lien).

by the creditor and the lien is enforceable when the bankruptcy petition was filed, the avoidance provision of §545(2) is not invoked.[35]

Where the debtor seeks turnover of the property, the issue is not avoidance of the possessory lien under § 545(2).  The real issue is the form of adequate protection that should be granted to the creditor as a condition to turnover.[36]

In *In re WEB2B Payment Solutions, Inc.*,[37] for example, a creditor claimed a possessory security interest in the debtor's deposits, and the chapter 7 trustee asked for turnover of the funds.  The Court emphasized the possessory nature of the security interest and the creditor's entitlement to adequate protection:

> Taken together, *Whiting Pools* and *Strumpf* provide a roadmap for creditors whose rights in collateral will be relinquished with possession.  Although § 542's turnover requirement is self-effectuating and obligates a creditor to turn over collateral upon demand by a trustee, the Supreme Court has said that a creditor in NABC's position – where relinquishment of possession will in and of itself destroy the creditor's rights – may withhold turning the collateral over until the bankruptcy court is able to make a determination as to whether, and to what extent, the creditor is entitled to adequate protection.  This procedure approved by the Supreme Court enables a secured creditor to both comply with a trustee's demand for turnover of assets of the estate, as required by *Whiting Pools*, but at the same time preserve its possessory lien in the manner approved in *Strumpf*.  These cases properly place the burden on the party wishing to preserve its lien, here

---

[35] *In re Oiltech, Inc.*, 38 B.R. 484, 486-87 (Bankr. D. Nev. 1984)(statutory retaining lien).
[36] *In re Matassini*, 90 B.R. 508, 509 (Bankr. M.D. Fla. 1988).  *See also In re Alessi Family Ltd. P'ship*, 261 F. Supp. 3d 1268 (S.D. Fla. 2017), and *In re Cross*, 584 B.R. 833 (Bankr. N.D. Ill. 2018).
[37] *In re WEB2B Payment Solutions, Inc.*, 488 B.R. 387 (8th Cir. 2013).

NABC, to ask the Court to adequately protect its possessory lien by entering an order providing that such lien continue in the proceeds being turned over.[38]

In *WEB2B Payment Solutions*, the creditor had not sought protection for its interest, and the Court ruled that it "lost its possessory lien when it turned the Debtor's account funds over to the Trustee without first seeking adequate protection."[39]

In this case, Sea Force filed a Motion for Adequate Protection in response to the Debtor's Motion for Turnover, and had not relinquished possession of the molds at the time of the hearing. The Motion for Turnover was granted subject to the Court's ruling on Sea Force's asserted lien, and the sum of $27,917.82 was placed in escrow pending the Court's determination of the validity and extent of Sea Force's lien.[40]

### D. Conclusion

The matter before the Court is Sea Force's Emergency Motion for Adequate Protection. The motion relates to certain boat molds that were owned by the Debtor, but possessed by Sea Force to use in the manufacture of fiberglass parts for the Debtor's boats. The Debtor sought the turnover of the molds so that it could deliver them to a third party that has purchased its assets. Sea Force contends that it holds a lien on the molds pursuant to

---

[38] *In re WEB2B Payment Solutions, Inc.*, 488 B.R. at 393.
[39] *Id*. at 394.
[40] Docs. 123, 125.

§ 713.596 of the Florida Statutes, and therefore requested adequate
protection for its lien as a condition to turnover.

The Court has considered § 713.596 and the record in this case, and
determines that Sea Force acquired a possessory lien on the molds when it
performed work for the Debtor and was not paid.  The lien was enforceable
for as long as Sea Force retained possession of the molds, without further
notice or action to perfect the interest.  Thus, Sea Force was entitled to
adequate protection for its interest as a condition to turnover of the molds,
and holds a valid and enforceable lien on the proceeds of the molds in the
amount of $27,917.82.

Accordingly, it is

**ORDERED**:

1. The Emergency Motion of Sea Force IX, Inc. for Adequate
Protection is GRANTED.

2. Sea Force IX, Inc. holds a valid and enforceable lien on the
proceeds of the Debtor's molds in the amount of $27,917.82.

Attorney Eric D. Jacobs is directed to serve a copy of this Order on
interested parties who are non-CM/ECF users and file a proof of service
within 3 days of entry of the Order.

Eric D. Jacobs, Esq.
Genovese, Joblove & Battista, P.A.
*Counsel for Sea Force IX, Inc.*

Charles A. Postler, Esq.
Amy Denton Harris, Esq.
Stichter, Riedel, Blain & Postler, P.A.
*Counsel for Debtor*